Drake,-Oh. J.,
delivered the opinion of tbe court:
This is a suit to recover damages alleged to have been sustained by the claimants by the sinking of the schooner Twilight, through a collision between her and the United States ship of war Iroquois, in April, 1864; the claim having been referred to this court by the House of Eepresentatives.
The petition was filed in this court on the 29th of October, 1866.
Depositions were taken on behalf of the claimant in November and December, 1866, and in January and March, 1867.
On the 7th of March, 1867, the claimants obtained leave to amend their petition by increasing the damages claimed from $25,000 to $30,000; and on the 25th of March their attorney filed a motion to suppress certain evidence placed on file by the defendants.
On the 26th of October, 1867, their attorney entered the case on the “-watch-book”; which was a docket then kept, under the rules of the court, wherein the attorney for a claimant entered the title of a case, stating that the testimony in chief on the part of the claimant had been closed, and directing the case to be entered upon the trial docket. Under that rule this case was entitled, in virtue of its entry on the watch-book, to be put on the trial docket of December term, 1867, and it was so put.
This was 'the last move made in the case on behalf of the claimants, so far as the records of the court show.
Three times thereafter, to wit, on February 26, 1872, February 19, 1876, and December 22, 1876, the Assistant Attorney-General filed motions to dismiss the case for want of prosecution ; and notice of the motion, on each occasion, according to the entries on the general docket, was given to claimants’ attorney.
Again, on the 20th of February, 1878, a similar motion was filed, and notice of it given to the attorney, as prescribed by the rule of the court; and under that motion the case was, on the 13th of May, 1878, dismissed for want of prosecution.
Hence it appears that from the time the case was put on the watch-book, October 26, 1867, till the day of its dismissal, May 13, 1878, a period often years, sis months, and seventeen days elapsed, within which no movement appears to have been made *222 in the case by or on behalf of the claimants. And beteeen the date of the dismissal and that of the filing of this motion, February 24, 1882, a further period of three years, nine months, and eleven days elapsed without any appearance in the court of any one for the claimants; making a total period of fourteen years, three months, and twenty-eight days wherein no such appearance was manifest; and this in a case where the demand was for $30,000.
Upon this state of facts we think that a very clear showing should be made to authorize the court to set aside the order of dismissal, and reinstate the case on the docket.
We repeat what we said in a former case of this character: “We are far from being disposed to dismiss any claimant’s case without giving him an opportunity to be heard upon its merits; but parties in this court, as in every other, should be held to some diligence in the prosecution of their suits.” (Schieffelin’s Case, 8 O. Cls. E., 359.) While we have always been, and still are, willing to show a liberality, in matters of practice, toward claimants, such as, we feel quite certain, no other court in this country would feel authorized to extend to plaintiffs, yet we must not lose sight of the rights of the government as a defend- . ant, nor suffer them to be impaired by overstrained favor to claimants.
Prima facie it would seem that we could not, without risk of detriment to the government, restore to the docket a case which had slept here for more than ten years and a half, and after that had been nearly four years out of court; and the grounds ought to be very strong to justify our assuming that risk. Let us examine those on which the claimants ask us to do it in this case.
In support of the motion two affidavits were presented, one from each of the claimants, from which it appears that they had made — one, “ seven or eight,” the other, “ twenty to thirty ” journeys in reference to this case; that they had expended —one, ufrom $400 to $500,” the other, u not less than $700” in expenses of journeys, fees for taking depositions, fees of witnesses, printing, and other necessary outlays; that neither had ever intended, or shown any inclination, to abandon the case, or supposed that their attorney intended to do so; and that neither had ever failed to answer any call of their attorney for money, service, or information.
*223 To the affidavit of one of tbem is annexed, as an exhibit, a letter from their attorney, dated March 5, 1867, in which he said: “ I will get the argument ready as soon as I can, and get a judgment in your favor before the court adjourns.”
So far as appears, there was no further communication between the claimants and their attorney for some eight years after the date of that letter. One of the claimants says that he saw the attorney in Washington in 1875; wheD the latter told him that he was going to obtain further legislation to remove doubtful points in the jurisdiction of this court and the liability of the government.
From this time till 1878, so far as is shown, the claimants made no move in the matter. In that year, failing to get replies from their attorney to letters written him, th ey applied — whether personally or by letter does not appear — to a man temporarily employed at the Capitol, to call on the attorney on .their behalf; who informed them that he had satisfied himself by ample inquiry that the attorney was not, and had not been for some time, in Washington, and that he was unable to ascertain his whereabouts.
From this time till 1880 the claimants show no movement on their part. In that year they learned from one Salter, who was employed in the Treasury Department, that the attorney had left Washington, and was not expected to return for any purpose; .whereupon Salter was requested by them to inquire at the Court of Claims concerning the case, and was then, for the first time, informed that it had been dismissed.
The affidavits disclose no movement by the claimants after that, until this motion was filed on the 24th of February, 1882.
During the whole period of time covered by the foregoing narrative, the claimants resided at Forked Fiver, Ocean County, .New Jersey; which, by an examination of maps, seems to us to be, at farthest, not more than two hundred miles, by the nsually traveled routes, from Washington; which place the claimants could at any time have reached from their home, probably, in fifteen to eighteen hours.
It does not appear that the claimants were, by any casualty, any extraneous impediment, or any unavoidable interference prevented from giving due and efficient attention to their case. Taking their own statements as true, it is simply an instance of negligence on their part, and seemingly on that of their at *224 torney also, as we think is apparent on the grounds now to be mentioned.
It is noteworthy that one of the claimants was a farmer and the other a mariner; and, presumably, neither of them was in such affluent circumstances as to make the gain or loss of $30,000 a matter of indifference to him.
Each had spent several hundred dollars about this case; which he could not expect ever to get bdek unless a judgment in their favor should be recovered here.
As early as March, 1807, they were advised by their attorney that he expected to get a judgment in their favor “ before the court adjourns.”
With every charitable allowance for the carelessness of people about matters far off from them, we cannot/help thinking it very remarkable that these two men, with so large a pecuniary stake as they claim to have had in this suit, should have let eight years elapse without pressing their case to trial, or, at least, seeking to stir up their attorney to action. To all appearance, this was gross negligence, and there is nothing before us to relieve it of that imputation. On the contrary, their subsequent delay to look after the case for three years after one of them saw their attorney in Washington, and the further delay of two years after learning that he had left there altogether, are circumstances of just the same nature.
Yiewing the case in all its bearings, we are constrained to the conclusion that neither the claimants nor their attorney had that faith in the justice of their cause which inspires confidence, nor that hope of success that excites diligence.
We deem it proper to add that we have gone at this length in discussing this matter because very many other cases have been dismissed under the rule that operated in this; and it seemed to us fit to indicate the general grounds on which motions to reinstate such cases may be expected to be treated.
The motion to set aside the dismissal and restore the case to the docket is overruled.